**STATE of North Dakota,
Plaintiff/Appellee,**

**v.**

**Michael John ARNTZ,
Defendant/Appellant.**

**Cr. No. 693.**

Supreme Court of North Dakota.

Dec. 12, 1979.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Charles L. Chapman, Bismarck.

Rolf P. Sletten, Asst. State's Atty., Bismarck, for plaintiff and appellee.

PAULSON, Justice.

The defendant, Michael John Arntz ["Arntz"], appeals from a judgment of conviction and from an order denying his motion for suppression of evidence, both of which were issued by the Burleigh County District Court. Arntz was found guilty of the armed robbery of the Mr. Steak Restaurant located at 431 South Third Street in Bismarck on the evening of November 28, 1978. The conviction was based upon evidence obtained from Arntz in a search which Arntz contends was unlawful. Arntz concedes that if the evidence is admissible, his conviction should stand. The State agrees that if the evidence is inadmissible, the remaining evidence would be insufficient to support a conviction. The sole issue on appeal then is whether or not the district court erred in denying the motion for suppression of the evidence. We affirm the order of the district court denying the suppression of the evidence and, therefore, affirm the judgment of conviction.

On November 28, 1978, at about 10:30 p.m., the manager of the Mr. Steak Restaurant located on South Third Street in Bismarck was the victim of an armed robbery. The robber was a male, wearing a ski mask, and apparently armed with a covered weapon. He escaped with $636 in cash and checks. The restaurant manager telephoned the Bismarck Police Department and notified them that he had been robbed and that the robber had headed north on foot after leaving the restaurant.

Immediately after the phone call was received at the police station, Bismarck Police Officers Allan Nass and Dennis Walls proceeded to the scene of the robbery. As they approached the intersection of Third Street and Main Avenue, they observed a man "jogging" in a northerly direction and carrying something in his hands. At this time they were approximately five blocks north of the Mr. Steak Restaurant. The police were aware of several facts at that time: (1) that the restaurant had been robbed; (2) the location of the restaurant; (3) that the robbery had occurred just minutes earlier; (4) that money was taken; (5) that the robber was a male; and (6) that the robber had headed north on foot.

The police, upon viewing the "jogging" man, requested him to stop. Officer Nass got out of the police car to question the man, who stated that he was Michael Arntz. Nass asked Arntz why he was jogging and Arntz replied that he was cold. Nass testified that it was not particularly cold that evening and that Arntz was carrying, and not wearing, his gloves.

Nass also testified that Arntz appeared frightened and that his answers to questions were "irrational". Nass noticed that several of Arntz's jeans pockets were bulging and that there was a triangular piece of paper which appeared to be currency protruding from one of Arntz's pockets. Nass asked Arntz to explain the bulges and Arntz replied that it was money.

At that point Nass informed Arntz that they were going to take him to the police station and that there had been a robbery at the Mr. Steak Restaurant on South Third Street. The police officers handcuffed Arntz and took him to the police station where he was advised of his "*Miranda*" rights. At the station, Officer Walls removed the money from Arntz's pockets and found there a tally sheet for that day's receipts from the Mr. Steak Restaurant. Arntz then confessed to the robbery and showed the police the route he had taken from the scene of the robbery and the spot where he had hidden some of the clothing and weapons associated with the robbery.

■ The question of whether or not the district court erred in denying the motion to suppress requires a two-pronged analysis. The first prong of that analysis is whether or not the initial stop was justified. The second prong is whether or not the arrest was justified. If the search is to be justified as a search incident to arrest, the arrest itself must be lawful. *State v. Harris*, 286 N.W.2d 468 (N.D.1979); *State v. Gagnon*, 207 N.W.2d 260 (N.D.1973).

■ In the instant case the arrest was made without a warrant. As this court said in *State v. Meadows*, 260 N.W.2d 328, 331–332 (N.D.1977):

"All searches made without a valid search warrant are unreasonable unless, in addition to probable cause, they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant."

One of the recognized exceptions to the warrant requirement is that a search may be made incidental to a lawful arrest. *State v. Gagnon*, 207 N.W.2d 260, 263 (N.D. 1973). For a search incidental to arrest to be valid, the arrest must be lawful. In the instant case, the arrest was made without a warrant. An arrest without a warrant must be based upon reasonable cause. *Gagnon, supra* 207 N.W.2d at 263–264; § 29–06–15, N.D.C.C. The term "reasonable cause" as used in § 29–06–15, N.D.C.C., is synonymous with the more widely used term "probable cause". *See State v. Frye*, 245 N.W.2d 878, 881 (N.D.1976) and cases cited therein. A State standard for measuring probable cause to arrest must at least measure up to the Federal constitutional standard. *Frye, supra* 245 N.W.2d at 882.

■ We find that at the time of the initial stop and questioning of Arntz, he was not under arrest. The officers were aware of sufficient information to justify the limited intrusion of a brief stop for questioning. Such a stop was not unreasonable. It was a stop for investigative purposes in a location very near the scene of the recent crime. This type of a stop is universally upheld because of the limited nature of the intrusion. *See generally*, La-Fave, Search and Seizure § 9.3(d) (1978).

■ During the time of this permissible investigative stop, the facts and circumstances available to the police ripened into probable cause to make a custodial arrest of Arntz. The officers were already aware that there had been a robbery and that the robber was heading north on foot. When they stopped Arntz the following additional factors came to their knowledge: (1) he was nervous and frightened; (2) his answers to questions were irrational; (3) he was obviously in a hurry to get somewhere in a direction away from the scene of the robbery; (4) there were large bulges in his pockets, which bulges were in plain view; and (5) he told the officer that the bulges contained money. It was at this point that Arntz was taken into custody as a suspect in the robbery of the Mr. Steak Restaurant. As the district court found, the totality of the circumstances constituted sufficient probable cause to arrest Arntz for the robbery. Although none of the above-mentioned factors standing alone would justify Arntz's arrest, when they are all considered together the officers were certainly justified in arresting Arntz.

*United States v. Peep*, 490 F.2d 903, 906–907 (8th Cir. 1974) is persuasive, wherein the Eighth Circuit Court of Appeals stated:

"Probable cause to arrest depends 'upon whether, at the moment the arrest was made, * * * the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). And in making this assessment we do not isolate for independent analysis each factual circumstance, but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances."

There is some question as to whether or not Arntz was actually placed under arrest by the officers. Section 29–06–15 of the North Dakota Century Code sets out the pertinent provisions for when an officer may arrest without a warrant:

"*29–06–15. Arrest without warrant.*—A peace officer, without a warrant, may arrest a person:

1. For a public offense, committed or attempted in his presence; and for the purpose of this subsection a crime shall be deemed committed or attempted in his presence when what the officer observes through his senses reasonably indicates to him that a crime was in fact committed or attempted in his presence by the person arrested.

2. When the person arrested has committed a felony, although not in his presence.

3. When a felony in fact has been committed, and he has reasonable cause to believe the person arrested to have committed it.

4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested.

5. For such public offenses, not classified as felonies and not committed in his presence as provided for under section 29–06–15.1.

6. On a charge, made upon reasonable cause, of driving or being in actual physical control of a vehicle while under the influence of alcoholic beverages."

As our discussion above indicates, a felony robbery of the Mr. Steak Restaurant on South Third Street in Bismarck had been committed in fact, and the totality of the circumstances gave the officers reasonable or probable cause to believe that Arntz had committed the robbery.

▮ Arntz contends that the arrest did not meet the requirements of § 29–06–17, N.D.C.C., which provides:

"*29–06–17. Officer must state authority when arresting without warrant.—* When making an arrest without a warrant, the officer shall inform the person to be arrested of his authority and the cause of the arrest, unless:

1. The person to be arrested then is engaged in the commission of an offense; or

2. Such person is pursued immediately after the commission of an offense or after an escape; or

3. Such person flees or forcibly resists before the officer has opportunity so to inform him; or

4. The giving of such information will imperil the arrest."

Because the arresting officer was in uniform, we hold, as did the district court, that the requirement of stating his authority was met and we believe that, because the officer informed Arntz that he was being questioned in connection with a robbery at Mr. Steak Restaurant, the officer did adequately advise Arntz of the cause of his arrest. Also, we believe that subsection 2 of § 29–06–17, N.D.C.C., would justify the arrest because Arntz was pursued immediately after the commission of an offense.

The case of *State v. Iverson*, 187 N.W.2d 1, *cert. den.*, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971), is relevant. Iverson contended that his arrest was unlawful because it did not conform to the statutory requirement that he be informed of the cause of his arrest. This court said, *Iverson, supra* 187 N.W.2d at 22–23:

"Notwithstanding that Iverson may not have been verbally informed of the cause of his arrest, we are satisfied that the circumstances of his arrest . . . provided him sufficient notice of the cause of his arrest so that the objective of the statute was accomplished."

In the instant case, we conclude also that the circumstances of Arntz's arrest provided him with sufficient notice of the cause for his arrest to satisfy the objectives of § 29–06–17, N.D.C.C. This is not a situation where the officers trumped up a charge to use as a justification for an exploratory search.

Because we find that the arrest was valid, the search which produced the incriminating evidence also was valid. *See State v. Harris*, 286 N.W.2d 468 (N.D.1979); *State v. Gagnon*, 207 N.W.2d 260 (N.D.1973); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); and *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

As the United States Supreme Court said in *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973):

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

We note here the basic maxim that a search unlawfully undertaken cannot be made valid by what it produces. *State v. Iverson*, 219 N.W.2d 191, 194 (N.D.1974). However, in the instant case the police had probable cause to arrest Arntz and did in fact do so. Because the arrest was valid, the search incident thereto was also valid.

Because we find no error in the decision of the district court denying Arntz's motion to suppress the evidence, we affirm the order denying motion for suppression of evidence and, therefore, affirm the judgment of conviction.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.